I dissent from the majority opinion in this case.
The appellant, a convicted rapist, is being completely discharged because he was not tried within 270 days after being arraigned. The alleged failure is pursuant to Mississippi Code Annotated section 99-17-1 (1972), as set out in the majority opinion. The fallacy of the majority, in my humble opinion, is that the Legislature, in enacting the statute, clearly set out that the 270-day limit did not apply if "good cause be shown" for not having a trial during the required period. This exception clearly has been set out in prior opinions of this Court. In my judgment, there is no doubt that "good cause" clearly was shown which prohibits the discharge of the appellant.
In the first place, we have to look at the record of the case in the perspective of three different "sets" of attorneys who have handled the matter for the appellant. The first two were discharged at his request. All are competent attorneys but none seemed to satisfy appellant, although court appointed and paid for by the State. It is indicative of the course of the matter that the first attorneys handled appellant's case through the phase of arraignment, and preliminary motions. The second set of attorneys handled the second request for a psychiatric examination and the hearing on appellant's motion to dismiss under the statute. The third attorney handled the actual trial of the case and this appeal.
It is not determinative of the issues presented here, but any member of the bar with any appreciable trial experience knows that a defendant who gets three different sets of attorneys to handle his case at three different times and periods should expect delays.
On September 15, 1978, a hearing was had before the circuit judge by the second set of attorneys on the motion resulting in appellant's discharge by the majority. It developed in that hearing, as stated in the majority opinion, that the first order for a psychiatric examination was placed in the file and was not brought to the attention of the sheriff by either the state or the then defense attorney. The majority opinion places the entire burden and responsibility of getting the accused examined on the state. I respectfully submit that this is an erroneous conclusion. The defense attorney is the one who requested the examination; he was the one who drew the order and had it executed by the circuit judge; he was the one who knew that a delay in the examination would result in a delay of appellant's trial; he was the one who caused the order to be placed in the court file. The conclusion of the majority would serve to permit defendants to "sand-bag" and take action to delay psychiatric examinations. It is interesting to note that the second set of attorneys was appointed in December, 1977, yet, the so-called "missing order" secured by the first attorney was not "discovered" until April 7, 1978. It is admitted that the "lost order" was in the court file all the time. The only trouble was that its filing was not listed on the docket book. Is it not expected that the attorneys for the defendant inspect that defendant's file the same as the state?
The majority quotes from the United States Supreme Court case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In examining that case, I do not find that it supports the majority opinion. Even the United States Supreme Court stated there that:
 The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.
[Emphasis supplied].
The opinion further imposes a duty upon the defendant's attorney to take action in preparing for trial and not just wait out the state to see that pretrial procedures are had. In the present case, there was absolutely no action whatever by defendant's attorney to expedite the pretrial order for examination. Barker, supra, holds that the defendant through his attorney is required to do something, even if little, to secure a speedy trial. As was said in Barker: *Page 494 
 The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
An accused only can act through his attorney. The first of three attorneys filed the first motion for a psychiatric examination. He did absolutely nothing for the accused to justify later contending that any delay was caused solely by the state.
From the outset, the lower court advised all parties that considerable delay was being had in securing psychiatric examinations of persons accused of crime at the Mississippi State Hospital for the reason of the overcrowded patient load, and the lack of personnel. There is no evidence that the accused could have been examined even in the period of time from the indictment to his actual examination. In fact, because of the known delay, the lower court offered to have the accused examined by the Jackson Mental Health Center rather than wait for examination at the State Hospital.
The majority opinion states that a defendant has no duty to bring himself to trial. Any member of the bar with trial experience knows that in a lot of cases it is advantageous for the defendant deliberately to cause delays. I respectfully submit that the duty of expediting court trials is on all members of the bar, whether state prosecutors or defense attorneys.
The trial court, in the opinion overruling appellant's motion to dismiss, affirmatively stated that:
 It was customary procedure at that time [when the former judge signed the examination order of August 8, 1977] as well as at the present time for an attorney who obtains an order from the court to see that the order is put on record and that a copy is furnished to the sheriff in order that he can carry out the directions of the court and deliver the defendant to the Mississippi State Hospital at Whitfield for examination. [Emphasis supplied].
We find no dispute with this ruling of the trial court in the record.
The majority opinion states that reversible error exists because the state did not respond to appellant's contention that the delay caused him harm. With all deference to the majority, this is just not correct. There were only two assignments of error propounded in the pleadings in this Court. They were:
 1. The defendant was denied the right to a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and Article 3, section 26 of the Constitution of the State of Mississippi. [No mention is made of Mississippi Code Annotated Section 99-17-1 (1972)]. (Emphasis supplied).
 2. That the jury verdict and judgment of conviction was against the overwhelming weight of the evidence.
It is clear to me that the person briefing the case before this Court for the state recognized that the contention of appellant of any harmful delay was not well founded and according to this record needed no answer. This was not charged in the assignment of errors and was only incidental argument. If this Court starts assuming that everything is true as contended by one party in a brief and not denied by another, then we will shortly be in a state of hopeless confusion. The lower court clarified the matter of harmful delay in which appellant's second attorney contended that a material witness could not be located. At the hearing on the motion, appellant's second attorneys placed a witness on the stand to try and show the fact of a missing witness. In ruling on the motion, the lower court, who has the duty of observing witnesses and making decisions on conflicting matters such as this, stated: "First, as a matter of finding of fact, I observed James Turner on the stand and find his testimony completely unbelievable." *Page 495 
As stated above, why should there be any need for the state to answer further the testimony of witness James Turner? In addition to this and regardless of the disbelief of the contentions by the lower court, it advised defendant's attorneys as follows:
 I want to advise you and I will so instruct the district attorney that they will use their investigators to assist you in locating this person known as Phillip, and give him some guidance to follow. The information furnished by Mr. James Turner from the stand would be of very little benefit to anyone in locating the witness. Do you understand my request?
As stated above, the thrust of appellant's argument under his constitutional assignment of error is the mathematical count of 270 days, and the question of "good cause," not an alleged missing witness. This was secondary and did not enter into the disposition of the case in the trial court. No competent attorney writing a brief in opposition to appellant's brief would have thought it important to affirmatively go into the proposition that the appellant was prejudiced because of any delay as shown by the record in this case. As stated, the issue was whether or not there was "good cause" to justify a delay in the trial, not the alleged absence of a witness at the time of trial. To hold that a reversible error exists because of the alleged missing witness and the state's failure to stress that point, the testimony about which made such an impression on the trial judge, is placing an undue burden on the state. Under the majority opinion, every brief before this Court would be as long as possible to be sure and answer every statement of the opposing brief.
In my humble opinion, if there ever shall be a case where the 270-day trial rule should not be applied because the record shows "good cause" for not having a trial within that time, this is one. It is not a case of penalizing the accused. With deference, the majority opinion, when read after a full study of the record, penalizes the state and gives the accused who can fire attorneys at will, an advantage. No delay in this case was caused by the state. As hereinbefore seen, and as is known by trial attorneys, orders resulting in delays, which orders are prepared and presented to the trial court by attorneys and taken from the trial court's presence by that attorney, carry with them the requirement that that attorney has the duty of doing the necessary acts to effect the purpose of the order. I would affirm.
WALKER and LEE, JJ., join in this dissent.